IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| SHARON R. PHILLIPS, | ) | CASE NO. 5:20-CV-01718-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | CARMEN E. HENDERSON |
| v. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Sharon R. Phillips ("Phillips" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 20). Because the ALJ followed proper procedures and her findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying to Phillips DIB.

## II. Procedural History

On June 23, 2017, Claimant filed an application for DIB, alleging a disability onset date of June 14, 2017, and claiming she was disabled due to a back injury, sacroiliac injury, arthritis and the need for two back surgeries. (ECF No. 11, PageID #: 275-276, 292). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 11, PageID #: 182, 194, 224). On June 13, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 11, PageID #: 97). On July 23, 2019, the ALJ issued a written decision

1

finding Claimant was not disabled. (ECF No. 11, PageID #: 79). The ALJ's decision became final on June 9, 2020, when the Appeals Council declined further review. (ECF No. 11, PageID #: 53).

On August 4, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 14). Claimant asserts the following assignments of error:

> (1) The ALJ erred in failing to afford appropriate consideration and analysis to the opinions of the Plaintiff's medical sources pursuant to 20 C.F.R. § 404.1520c.
>
> (2) The ALJ erred in failing to include the need for a cane in formulating Plaintiff's RFC.

(ECF No. 12 at 9, 12).

### III. Background

#### A. Relevant Hearing Testimony

> The ALJ summarized Claimant's symptom testimony:
>
> The claimant alleged that she was disabled due to a variety of conditions, including a back injury necessitating surgery and arthritis (1E/2). She stated that her impairments forced her to stop working (1E/2). She reported that she could lift only minimal amounts of weight and she could not stand for long periods (Testimony). The claimant testified that she used a cane to ambulate (Testimony). She asserted that she was depressed and she sat in a recliner for much of the day (Testimony). She further claimed that she had carpal tunnel syndrome and arthritis in her hands, causing difficulty using her hands (Testimony).

(ECF No. 11, PageID #: 87).

#### B. Relevant Medical Evidence

> The ALJ also summarized Claimant's health records and symptoms:
>
> The record reflects that the claimant had a history of several conditions predating the alleged onset date in June 2014, including lumbar disc degeneration with right disc protrusion at L5-S1 (1F). She underwent lumbar microdiscectomy of L5-S1 and the same

procedure was redone in late 2013 (1F/67, 69). In June 2014, the claimant had a check-up for back pain after she slipped and fell (1F/29). She said she was unable to return to work due to pain (1F/29). She displayed tenderness in her low back and limited flexion, but normal straight leg raising except for some pain (1F/30).

During a physical therapy assessment in June, the claimant said that her back pain was better with sitting, walking, and resting (3F/50). She said she had trouble getting out of bed and she had disturbed sleep due to pain (3F/50). She displayed some decreased strength due to pain, but intact sensation and lower extremity myotomes (3F/50). She exhibited a normal gait pattern (3F/50). After several physical therapy sessions, the claimant failed to return (3F/38).

Into the summer, the claimant complained of right knee pain and swelling (13F/6). Imaging documented minimal narrowing of the medial joint compartment that was stable from previous imaging (3F/58). A lumbar spine MRI revealed scarring at L5-S1 on the right and minimal disc protrusion (1F/24). She had decreased deep tendon reflexes symmetrically but otherwise normal exam findings through the fall (1F/18-24). Her reflex deficit resolved and she had a normal gait (1F/21).

The claimant had a February 2015 exam for her worsening back pain (1F/15). She displayed tenderness in her low back and she had pain while standing in her right sacroiliac area (1F/17). However, she had no muscle weakness (1F/17). Through the spring, the claimant had similar exam findings with periodically decreased reflexes, but normal muscle strength, sensation, straight leg raising, and gait (1F/9-13; 7F/39-61).

In July, the claimant said that her back pain was worse and aggravated by daily activities (1F/5). Her exam was unremarkable with a normal gait (1F/6). She later had sacroiliac injections with little effect, although her exam findings were stable (1F/1, 2). Imaging later in the summer revealed sclerotic changes of the sacroiliac joints (3F/35). She underwent sacroiliac injections (7F/31, 32).

During a November exam for back pain, the claimant had decreased reflexes and positive straight leg raising, but normal strength and gait (6F/82). Other exams during the fall showed decreased reflexes and sacroiliac pain, but normal strength, gait, and straight leg raising (7F/26). Thereafter, the claimant had lumbar epidural steroid injections (7F/13).

Into 2016, the claimant had continued low back pain and limited motion for which she took Tramadol and Robaxin (6F/14-20). She was noted to be ambulating with a cane, but the treatment notes did not indicate that an ambulatory aid was necessary (6F/19). Other exams showed that the claimant had sacroiliac joint tenderness and diminished lower extremity reflexes, but normal gait, motion, and motor strength (7F/6).

A June lumbar spine MRI documented postoperative changes at L5-S1 on the right with epidural scarring around the right S1 nerve root, but no nerve root compromise (3F/4). There was also mild facet arthropathy at L4-S1 (3F/4).

In August, the claimant had a follow-up for chronic arthralgias in her knees, shoulders, hips, hands, wrists, and low back (2F/13). She said she could not walk or sit for long periods (2F/13). She was obese with a body mass index (BMI) of 33 (2F/15). The claimant displayed lumbar muscle tenderness, but full range of motion in her extremities, normal strength, and normal gait (2F/15, 16). Through the fall, she reported worsening of her right knee with locking (2F/21; 14F/14). Her exam findings were stable (2F/23; 14F/14).

The claimant had persistent low back pain into 2017 with limited motion (6F/5-9). She ambulated with a cane, but it is not clear that any medical professional determined that the use of a cane was necessary (6F/9). She took Percocet and she used a TENS unit (6F/8). Through the summer and fall, the claimant remained on medication for ongoing back pain (9F). She was noted to be ambulating with a cane (9F).

In October, the claimant complained of worsening bilateral hand, wrist, and forearm pain (8F/1). On exam, she was obese with a BMI of 32 (8F/1). While she had pain in her wrists and positive Phalen sign, she demonstrated normal strength, reflexes, and motion (8F/1). She was prescribed Prednisone (8F/1). In other exams during the fall, the claimant had tenderness in multiple joints and lumbar spine (10F). She had some swelling, which improved with medication (10F/3). She also had some synovitis in her fingers, but generally normal range of motion overall (10F/6).

The claimant had a December check-up for her ongoing back pain (12F/4). She displayed tenderness to palpation in her lumbar spine and limited extension but full lumbar flexion (12F/6). She exhibited normal gait, straight leg raising, and reflexes (12F/6). Lumbar medial branch blocks in early 2018 provided limited relief, but her exam findings were stable (12F/12-14; 14F/27-). Along with lumbar

4

spine symptoms, she also had synovial thickening in her fingers but full extremity motion (14F/30-35).

In the spring, the claimant noted continued low back pain although she tried to be active and walk on a treadmill (12F/21). She had an antalgic gait, she used a cane, and she had abnormal reflexes (12F/23). Moreover, the claimant had a sensory deficit and diminished lumbar spine motion (12F/23). Additionally, the claimant had right carpal tunnel surgery and some swelling of her fingers (14F/36, 39). Her hand pain improved through the summer and fall (14F/41-50).

The claimant had a January 2019 exam for back pain where she demonstrated decreased motion and tenderness in her lumbar spine, but normal gait, sensation, strength, reflexes, and straight leg raising (12F/31). The following month, the claimant had continued low back pain and she was learning over a chair during her exam (13F/26). She had decreased motion and she said sitting for long periods exacerbated her pain (13F/26). Moreover, the claimant was obese with a BMI of 34.76 (13F/26). Into the spring, the claimant had ongoing joint pain and synovial thickening, but her symptoms improved with treatment (14F/51-56).

(ECF No. 11, PageID #: 87-89).

C. **Opinion Evidence at Issue[1]**

　　1. **Cyril Marshall, M.D. – treating orthopedic surgeon**

Dr. Marshall had treated Claimant's low back strain since December 10, 2015. (ECF No. 11, PageID #: 684). On March 14, 2016, Dr. Marshall sent a letter to Claimant's workers' compensation attorney addressing her treatments related to her back issues. (ECF No. 11, PageID #: 719-720). In that letter, Dr. Marshall opined that Claimant was disabled and could not return to her past work. (ECF No. 11, PageID #: 720). Similarly, on April 11, 2016, Dr. Marshall sent a letter to Claimant's workers' compensation attorney stating that Claimant could not return to her past work due to L4-5 and L5-S1 disc protrusions. (ECF No. 11, PageID #: 732-733).

---

[1] Claimant does not dispute the ALJ's evaluation of the state agency opinions, which the ALJ found "somewhat persuasive". (ECF No. 11, PageID #: 89-90).

5

On February 27, 2017, Dr. Marshall sent a third letter to Claimant's workers' compensation attorney addressing Claimant's treatments related to her back problems. (ECF No. 11, PageID #: 684-685). Dr. Marshall stated the Claimant uses a "TENS unit to help manage pain. Her lumbosacral range of motion remains limited. She requires a cane to walk." (ECF No. 11, PageID #: 685). Although Dr. Marshall requested that Claimant attend physical therapy, he "did not push the issue, as significant improvement with conservative treatment [is] not anticipated." (ECF No. 11, PageID #: 685). Dr. Marshall then opined that Claimant "is not employable" and that Claimant's impairments "rendered her permanently and totally disabled." (ECF No. 11, PageID #: 685).

The ALJ found Dr. Marshall's statements unpersuasive. (ECF No. 11, PageID #: 90).

2. **Scott Secrest, M.S. – occupational therapist**

On September 27, 2016, Mr. Secrest completed a functional capacity evaluation of Claimant upon referral from Dr. Marshall. (ECF No. 11, PageID #: 556-567). Mr. Secrest stated that Claimant "demonstrated the ability to perform Pushing at the Light demand level; Mid Lift, Low Lift, Overall Strength at the Sedentary demand level; Sitting, Standing, Walking on a Frequent basis." (ECF No. 11, PageID #: 556). Mr. Secrest made the following conclusion:

> The functional capacity evaluation was terminated prematurely as the client had a significant increase in the magnitude of her pain symptomology with the limited tasks that were attempted. Her pain behaviors were significant and pervasive throughout the evaluation with frequent and extended rest breaks, significant postural adjustments, utilization of external support, and excessive lacrimation and perspiration.
>
> Based exclusively on the available data the client demonstrates no greater than Sedentary Work Capacity. Furthermore, within the Sedentary Demand Level, she will need frequent opportunities to make positional adjustments. Thus, her practical and reasonable work capacity is marginal.

6

(ECF No. 11, PageID #: 556-557).

The ALJ found Mr. Secrest's opinion unpersuasive. (ECF No. 11, PageID #: 89).

### 3. John Ruth, M.S. – vocational expert

At the request of Claimant's workers' compensation attorney, on June 5, 2017, Claimant attended a vocational evaluation performed by Mr. Ruth, a vocational expert. (ECF No. 11, PageID #: 831-834). Mr. Ruth indicated that Claimant was unable to seek or sustain employment due to her range of motion restrictions; limited lifting capacity; medical contraindications to employment (specifically, the opinions of Dr. Marshall and Mr. Secrest); poor manual dexterity capabilities; limited sitting, standing, and walking tolerances; specific work restrictions; lack of transferability of pas relevant work experience; and lack of rehabilitation potential. (ECF No. 11, PageID #: 831). Mr. Ruth opined that despite Claimant's relatively young age she would be "unable to successfully seek or sustain remunerative employment now or in the future". (ECF No. 11, PageID #: 834).

The ALJ noted that Mr. Ruth was not a medical source and she was not required to articulate consideration of his statement. (ECF No. 11, PageID #: 90).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with facet arthropathy status post microdiscectomy, obesity, osteoarthritis of the bilateral knees, degenerative arthritis in the hands, wrists, hips, and knees, arthralgia/myalgia, rheumatoid arthritis, and carpal tunnel syndrome bilaterally status post release (20 CFR 404.1520(c)).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry (including upward pulling) twenty pounds occasionally and ten pounds frequently. She can stand and/or walk (with normal breaks) for a total of about four hours and sit (with normal breaks) for about six hours in an eight-hour workday. She

can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold. She can frequently handle and finger bilaterally. The claimant must avoid all hazards (including no unprotected heights or dangerous moving equipment).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 14, 2014, through the date of this decision (20 CFR 404.1520(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal: (1) whether ALJ erred in failing to afford appropriate consideration and analysis to the opinions of the Claimant's medical sources pursuant to 20 C.F.R. § 404.1520c; and (2) whether the ALJ erred in failing to include the need for a cane in formulating Claimant's RFC.

**1. The ALJ did not error in her consideration of the medical opinions.**

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a).[2] Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ...."). In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions...from that medical source together in a single analysis using the factors listed

---

[2] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

10

[above], as appropriate." *Id*.

The regulations at 20 C.F.R. § 404.1520b for claims filed on or after March 27, 2017, deem decisions by other governmental agencies and nongovernmental entities as well as and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(1)-(3) (2017). The regulations thus make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c) (emphasis added).

### A. Cyril Marshall, M.D.

Dr. Marshall sent three progress notes to Claimant's workers' compensation attorney. Within those notes, Dr. Marshall stated that Claimant was disabled and could not return to her past work (ECF No. 11, PageID #: 720, 732-733); Claimant "require[d] a cane to walk" (ECF No. 11, PageID #: 685); she "is not employable" and her impairments "rendered her permanently and totally disabled" (ECF No. 11, PageID #: 685); and that he did not anticipate "significant improvement with conservative treatment" (ECF No. 11, PageID #: 685).

Claimant mistakenly states that the ALJ did not address Dr. Marshall's opinion. (ECF No. 12 at 9). Although the ALJ did not identify the opinion by Dr. Marshall's name, she nonetheless discussed the opinion, specifically cited the opinion, and explained that she found his opinion not persuasive. Specifically, the ALJ stated:

> The record contains numerous opinions regarding the claimant's workers' compensation claim, including assessments of temporary limitations and statements that the claimant could not return to her previous work (e.g., 6F/23, 31, 54). The undersigned finds that such opinions are not persuasive because they were relatively conclusory and applied to only limited periods.

11

> Other workers' compensation evaluations include statements that the claimant was not employable (6F/24). The undersigned finds such conclusions unpersuasive. They were conclusory with no explanation of the specific limitations and the determination of the ability to work is reserved to the Commissioner. Nevertheless, the undersigned considered the clinical findings in fashioning the residual functional capacity.

(ECF No. 11, PageID #: 90).

Claimant concedes that the ALJ did not need to address Dr. Marshall's opinion that Claimant is permanently and totally disabled as "this ultimate decision is reserved for the Commissioner." (ECF No. 12 at 10). Claimant agues, however, that the ALJ failed to address Dr. Marshall's statements regarding Claimant's "treatment course, his recommendations, his opinion that further conservative treatment won't help her, that she is limited to significantly reduced range of sedentary work at best, and [ ] that she requires a cane for walking." (ECF No. 12 at 10). The Commissioner argues that the ALJ was not required to explain the persuasiveness of Dr. Marshall's opinions since "they are not considered medical opinions and are indeed regarding issues reserved to the Commissioner." (ECF No. 14 at 11 (citing 20 C.F.R. § 404.1527(d)).

As noted previously, when an ALJ receives medical opinions, she is required to articulate how persuasive she finds them. 20 C.F.R. § 404.1520c(a). A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations" in his ability to perform physical and mental demands of work activities and his ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Judgments about the nature and severity of a claimant's impairments, medical history, diagnoses, treatment prescribed with response, and prognoses are all considered "other medical evidence" and not medical opinions. 20 C.F.R. § 404.1513. The ALJ is not required to explain how she considered medical evidence. 20 C.F.R. § 404.1520c (stating only that the ALJ is

required to articulate how she considered medical opinions and prior administrative findings). Dr. Marshall's letters provided only medical history, observations, diagnoses, and that Claimant is disabled and unable to work. None of this can be considered a "medical opinion." *See e.g. Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (Observations about a claimant's gait and ambulation "are more like statements made by plaintiff about his conditions," not objective medical evidence.) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). There was no statement about what Claimant could or could not do or whether he had any impairment-related limitations. Accordingly, the ALJ was not required to articulate how she considered the supportability and consistency factors when she assessed Dr. Marshall's statements. Instead, the ALJ was required to consider the statements along with all the other evidence in Claimant's file. In this case, it is clear that the ALJ considered Dr. Marshall's medical records, including each of Dr. Marshall's statements. That is all that the regulations require.

The Court, therefore, finds that the ALJ did not err in finding Dr. Marshall's letters not persuasive.

### B. Scott Secrest, M.S.

On September 27, 2016, Mr. Secrest completed a functional capacity evaluation of Claimant upon referral from Dr. Marshall. (ECF No. 11, PageID #: 556-567). Mr. Secrest stated that Claimant "demonstrated the ability to perform Pushing at the Light demand level; Mid Lift, Low Lift, Overall Strength at the Sedentary demand level; Sitting, Standing, Walking on a Frequent basis." (ECF No. 11, PageID #: 556). Mr. Secrest concluded that Claimant "demonstrates no greater than Sedentary Work Capacity. Furthermore, within the Sedentary Demand Level, she will need frequent opportunities to make positional adjustments. Thus, her practical and reasonable work capacity is marginal." (ECF No. 11, PageID #: 556-557). Mr. Secrest indicated that Claimant

13

could perform occasional lifting of up to ten to fifteen pounds; frequent lifting of ten pounds; and frequent walking, sitting and standing. (ECF No. 11, PageID #: 558).

As stated above, the revised regulations provide that when articulating her finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. 20 C.F.R. § 404.1520c. Here, the ALJ's explanation satisfied the regulation. The ALJ found that Mr. Secrest's opinion was not persuasive and explained that the conclusion that Claimant was limited to a range of sedentary exertional activity was "based primarily on claimant's pain behaviors rather than objective exam findings" and that the "balance of the treatment notes did not document significant functional restrictions." (ECF No. 11, PageID # 89).

Moreover, the ALJ's conclusion is supported by substantial evidence. As the Commissioner points out, Mr. Secrest's examination revealed slight weakness of the shoulder but otherwise grossly intact strength of the other extremities, restricted range of motion of the lumbar spine but otherwise active ranges of motion that were within functional limits, and no evidence of significant gait abnormality or muscle atrophy. (ECF No. 11, PageID #: 562-563). Additionally, although Mr. Secrest terminated the examination prematurely due to Claimant's subjective complaints of pain, he noted that the "magnitude of [Claimant's] pain behaviors appeared somewhat disproportional to task performance". (ECF No. 11, PageID #: 556). The ALJ properly discounted Mr. Secrest's opinion as it was not supported by objective medical tests, but, rather, relied on Claimant's subjective pain behaviors. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (holding that doctors' opinions are not due much weight when based solely on reports made by a patient that the ALJ found to be incredible)).

14

Likewise, Mr. Secrest's opinion is inconsistent with the remainder of the medical records. Claimant's treatment records document that Claimant routinely presented with intact gait, inconsistent use of a cane for ambulation, normal strength of the extremities, and no swelling, significant weakness or atrophy of the lower extremities. (ECF No. 11, PageID #: 438-440, 446, 499, 562, 666-683, 693, 715, 770, 782, 791, 805, 821, 823, 858, 866, 886, 888, 898, 901, 908-909, 916, 920, 925, 934, 937, 943, 948, 953, 956, 959). Furthermore, the objective medical evidence is inconsistent with Mr. Secrest's opinion in that diagnostic studies of the lumbar spine, knees, hips, and hands demonstrated mild to moderate pathology, and imaging of Claimant's shoulders was normal. (ECF No. 11, PageID #: 436, 441, 453, 456, 484). Despite continuing complaints of pain, Claimant was not deemed a surgical candidate and managed her pain conservatively with medication, injections, heat and electric stimulation. (ECF No. 11, PageID #: 499, 559, 664, 666-683, 936-958).

Accordingly, the ALJ appropriately considered the consistency and supportability of Mr. Secrest's opinion and found it unpersuasive. Substantial evidence supports the ALJ's finding.

### C. John Ruth, M.S.

Claimant acknowledges that "Mr. Ruth is not a medical source and the ALJ is correct that there is not a requirement to articulate her analysis of the persuasiveness of this opinion." (ECF No. 14 at 11); 20 C.F.R. § 404.1520c (agency is "not required to articulate how [it] considered evidence from nonmedical sources"). However, Claimant argues that "the hearing testimony suggests that the ALJ was under the impression that she could not even consider the opinion at all under the new rules[.]" (ECF No. 14 at 11).

The ALJ's decision clearly indicated that she considered Mr. Ruth's opinion:

> John Ruth, M.S., C.D.M.S, a vocational consultant, performed an
> evaluation of the claimant's ability to work and found that based on

15

> various measurements of physical abilities, the claimant could not maintain remunerative employment (11F). Mr. Ruth was not a medical source and thus the undersigned is not required to articulate consideration of such statement. Nevertheless, it is noteworthy that Mr. Ruth was not a medical source and the assessment was on an issue reserved for the Commissioner. Moreover, Mr. Ruth's opinion based his conclusions on the functional capacity evaluation, which itself was of limited value, as noted above.

(ECF No. 11, PageID #: 90). The ALJ noted that Mr. Ruth was not a medical source, that his assessment was on an issue reserved to the Commissioner, and that Mr. Ruth's opinion was based on the functional capacity evaluation performed by Mr. Secrest, which, as explained above, the ALJ properly discounted. Thus, even if the ALJ was unsure at the time of the hearing as to whether she could consider the opinion, the decision clearly indicates she did. Nothing more is required by the ALJ.

### 2. Substantial evidence supports the ALJ's decision not to include the use of a cane in the RFC.

In her second assignment of error, Claimant argues that the ALJ failed to properly analyze the need for a cane. (ECF No. 12 at 12). Specifically, Claimant states that

> In the present case, there is more than just consistent reference to the use of a cane. As previously noted, Dr. Marshall explicitly states that she requires a cane for walking. The ALJ does mention the use of a cane in the decision. The decision states, "Additionally, although the claimant used a cane at times, objective findings documented largely normal gait and it does not appear that she required a cane to stand at any point." [ ] This lone statement falls well short of making a determination that the cane is not medically necessary. The decision does not make any determination concerning the medical necessity of the cane as required by the regulations and case law cited above. Indeed, there is no medical source in the record suggesting that Ms. Phillips should not use her cane. As such, there is no evidentiary basis to conclude that the cane is not medically necessary.

(ECF No. 12 at 12).

16

Here, the ALJ found that Claimant failed to fulfill her burden to produce evidence that her use of a cane in the workplace was medically necessary. (ECF No. 11, PageID #: 90). Specifically, the ALJ stated: "although the claimant used a cane at times, objective findings documented largely normal gait and it does not appear that she required a cane to stand at any point." (ECF No. 11, PageID #:90). Substantial evidence supports the ALJ's determination that Claimant's use of a cane was not medically required.

Social Security Ruling 96–9p addresses the use of an assistive device in determining RFC and the vocational implications of such devices:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.[] For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

17

> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

*Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185 (footnote omitted).

The Court finds that the ALJ applied the proper legal standards in the instant case and substantial evidence supports her determination that the medical evidence of record did not establish that a cane was medically required. In her decision, the ALJ acknowledged Claimant's use of a cane but found that the objective evidence demonstrated largely normal gait and that Claimant did not require a cane to stand at any point. (ECF No. 11, PageID #: 87-90).

Claimant cites to Dr. Marshall's notation that she "requires the use of a cane" to support the argument that a cane was medically necessary. However, SSR 96–9p requires medical documentation of the need for the assistive device, not just notations relating to a claimant's continued use of an assistive device. *See Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (collecting cases). Thus, Dr. Marshall's note does not constitute the medical documentation required by SSR 96–9p. Dr. Marshall did not affirm that the cane was medically required, and he did not identify any circumstances under which it was required. Additionally, despite observing that Claimant used a cane and her complaints of continuing low back pain, Dr. Marshall noted that Claimant's "gait [was] not affected" (Tr. 622). Thus, SSR 96–9p is not satisfied by Dr. Marshall's notation.

Although various medical records note that Claimant presented at appointments using a cane, these notations do not meet the requirements of SSR 96–9p. None of the medical records indicated that the cane was medically necessary, and none provided information concerning the circumstances under which Claimant was required to use it. Moreover, Claimant routinely presented with intact gait, normal strength, no swelling, no significant weakness, and no atrophy of the lower extremities. (ECF No. 11, PageID #: 438-440, 446, 499, 562, 666-683, 693, 715, 770, 782, 791, 805, 821, 823, 858, 866, 886, 888, 898, 901, 908-909, 916, 920, 925, 934, 937, 943, 948, 953, 956, 959); but see (ECF No. 11, PageID #: 858 (abnormal straight leg raise and abnormal gait)). Additionally, Claimant's use of a cane was inconsistent. *See Ross v. Comm'r of Soc. Sec.*, No. 2:17CV169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (substantial evidence supported ALJ determination that claimant did not medically require assistive device as records regarding use of cane were inconsistent, she was observed ambulating normally without a cane, and no doctor offered opinion claimant needed a cane and did not describe circumstances in which claimant needed cane) (citing SSR 96–9p and *Scroggins v. Comm'r of Soc. Sec.*, No. 16–11913, 2017 WL 4230650, at *3–4 (E.D. Mich. Sept. 25, 2017) (ALJ reasonable in concluding that claimant failed to establish that a cane was medically necessary when no medical source opined that she needed the cane and no medical documentation described circumstances for which she required a cane)).

Accordingly, the ALJ correctly applied SSR 96–9p in finding that the cane was not medically necessary and substantial evidence supports that determination. *See Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018). Although the ALJ did not specifically state that the use of a cane was not medically necessary, her explanation that the objective medical findings did not support a need for a cane demonstrated that the ALJ properly considered whether a cane was medically necessary. Additionally, as discussed above, substantial

19

evidence supports the ALJ's decision not to include the use of a cane in the RFC. "While substantial evidence may exist to the contrary, the decision of the ALJ is supported by his review of the medical evidence which failed to contain documentation of the medical necessity for the cane [ ], and failed to provide a description of the circumstances for which [a cane was] needed, such as whether [it was] needed all of the time, sometimes, in certain situations, for certain distances, or on certain terrains, or any other information." *Id.* at *5 (citing SSR 96–9p).

Accordingly, Claimant's second issue is without merit.

## VI. Conclusion

Because the ALJ followed proper procedures and her findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Phillips Disability Insurance Benefits.

**IT IS SO ORDERED.**

DATED: November 30, 2021

                                                    *s/Carmen E. Henderson*
                                                  **Carmen E. Henderson**
                                                  **United States Magistrate Judge**